Good morning, Your Honor. May it please the Court, Evan Smiley, I'm the attorney for the appellants and cross appellee in this matter. Your Honor, I'd like to reserve a few minutes for rebuttals. Sure, watch your time. If I can move into it. Your Honor, the first issue we raise is whether this is an interlocutory or final order and whether this appeal should be dismissed or whether it should proceed. And I'm prepared to address both matters. Your Honor, we believe that this is not a final order given Judge Morrow's ruling and remand of the proceeding back to the bankruptcy court. We have a rather relaxed approach to what's a final order in bankruptcy cases, so I'm not sure you need to dwell too much on that point. I will move on then, Your Honor. I'm speaking only for myself. But she's very learned. She is. I will move on in our brief case deposition. I'd like to move on to the issue of private retirement plan because that's what the debtor in this case tried to exempt. After a four-day trial, Judge Ryan, as you know, sustained the creditor's objection, which was subsequently reversed by Judge Morrow. Really, the issue is, and there's a long line of exemption cases coming out of this court and out of the Ninth Circuit Bankruptcy Appellate Panel on this issue. But what it comes down to is we have different facts in different cases. And the real issue is whether the court, when determining whether a plan was designed and used primarily for retirement purposes, whether it must look, I would say, with binoculars into the four corners of the plan itself, or whether it's to consider all factors, i.e., circumstantial evidence of what's going on at the time, in addition to what's going on within the four corners of the plan. And that's very relevant here. Judge Morrow took the position, based upon a state court case, the Schwartzman case, that it should be limited. And Judge Ryan based it upon what took place in the plan and what took place in the debtor's affairs outside of the plan. We presented, regardless of how the court decides that issue, and we would urge the court, because when you look at how someone designs something, you have to look at the subjective intent of what is in the debtor's head at the time, i.e., are they putting the money into the retirement plan for retirement planning, or are they doing it for asset protection? Well, what if it's put there in part for asset protection and in part for tax reasons? If it were just for tax reasons, would that be a basis for saying that it was not for retirement purposes and wouldn't be filtered? Your Honor, if it was just for tax reasons, and this is not so, there's a couple of cases that have come down out. One case out of the Ninth Circuit, Henry Simpson, was issued by the Ninth Circuit in February of this year, and the cite on that case is 557F3-1010. And there's also another case that came down since that time out of the district court, which is Segovia v. Shenneman, which the cite on that is 2009 Westlaw 839038. But, Your Honor, I would say that if it's put in for tax reasons, then it is not ñ We have 28 J letters if you were going to throw cites at us of new cases. It's always helpful to both you and the Court and to the opposing counsel to call them to our attention. Agreed. And I just came across this case was issued March 30th in the last couple of days, and I will file a list of the cites of the two cases following today's hearing. But our clerks are pretty good about picking these up, but we aren't perfect. Understood. Understood. But to answer your question, if it's for tax purposes, I would say, no, it's not for retirement purposes. It's for tax purposes. And that's the point. You know, it's interesting. You look at the Daniel case and you ñ or the Bloom case. And a lot of these cases, the debtor, unlike here, complies with the actual plan term. But you hit the nail on the head. Why did they make that contribution to the plan is really the question. In Daniel, they made it on the eve of bankruptcy, although it was compliant with the Internal Revenue Code factors. And the Court found that the objection to exemption was sustained because of why it was put in there. So to answer your question, if it's for tax reasons, no. I would urge the Court to ñ I would think at that point it's not used or designed. The subjective intent is important, and that's the key thing. And we submitted so much evidence inside the plan, outside the plan, of gross overfunding, stuffing in the plan, being deceitful on the tax returns, even within the plan, of what the debtor reported. It's interesting, on those tax returns, and the record reflects this, the debtor way over-contributed to the 401K. They set up many 401K plans and pension plans. It underreported the tax on the Form 5500, which is a public document. Most ñ and the logical conclusion that was argued to the bankruptcy court, most people who are deceitful or who report things inaccurately on their tax returns do it to take too much of a deduction. There's an entire pattern of ñ I have a question. As I was reading through, a lot of this is very fact-driven. We have an interesting situation where we have two trial-level judges in the sequence. We have the bankruptcy court, which actually heard the witnesses and did all of that. We have then a district court. There was no evidence. As far as I know, it's all on paper. Is that correct? That is correct. All right. Is there anything in our circuit law that says whether we owe deference to either one of those trial courts to the extent that this is heavily fact-driven? Your Honor, I would say the answer is yes, and it has to do with the level of review in terms of factual findings. And the ñ and here in our circuit, the ñ you know, the case I would cite to is Edmund Rayne's 428F3893, Ninth Circuit case, which says that findings of fact should be accepted unless there is a definite and firm conviction that it was stated. Whose findings? The bankruptcy court's findings, who is the trier of fact. So I think it's a clear air standard. I don't know whether I'm going to believe the precedents.  And there were not ñ you know, Judge Ryan evaluated the witnesses after a four-day evidentiary hearing. But going back to the Blum case, the Blum case out of the Ninth Circuit says you can ñ it's a non-exhaustive list. Here we have things that happened within the plan and outside the plan. Counsel, Judge Gould, I have a question for you. You know, if there are particularized fact findings, then I understand the deference. But the thought here that the crux of the issue for us is whether the intent was primarily for retirement purposes. And once you put a word like primarily in, it's starting to sound, you know, like a mixed question of fact and law. So what I want to know is this. Are there any precedents where courts, bankruptcy courts, district courts or circuit courts, have ever found a plan was not primarily for retirement purposes when the funder of the plan didn't pull money out of the plan by distribution or loans? Because my understanding is that this is a fairly unique case. Because here, you know, the funder of the plans did a bunch of things that led to the bankruptcy court's finding or conclusion. But he never drew money out of those plans, right? That's correct. These facts are different. But what's clear from Blum is you examine all the facts and he's ñ so the answer is no, Your Honor. I know what ñ so I want to know the ñ I know the standard. But is ñ the answer is no. There is no precedent that's heretofore said that funding was not primarily for retirement purposes, absent money being drawn out of the plans. The only cases that we have found has been where debtors have drawn monies out of the plan. However, we believe the facts are so egregious here in terms of the gross, gross overfundings of the plan that we ñ that in light of Blum and Daniel, but really Blum that says you look at everything that ñ and in light of Judge Ryan's factual findings, which we believe the appellate court should give deference to, that this ñ we have different cases with different facts, yet that's the issue. And the facts that we've presented in the conclusions that Judge Ryan reached support the conclusion. I'd like to reserve, if I could. You don't have anything to reserve, but I'll probably give you a minute. Thank you. As I say, it counts up. Thank you. Good morning, Your Honors. Police, the Court. Mark Bradshaw on behalf of the Chapter 7 Bankruptcy Debtor, Lloyd Rucker. Judge Morrow. Mr. Bradshaw, Judge Gould, on that same question I just asked, given the other facts that were determined in the bankruptcy court, why shouldn't we make a precedent that says although the funder didn't borrow or take money out of the plans, still we can see that they weren't primarily for retirement purposes. They were to shield assets. So what's your best argument as to why we should not apply that standard that way? Well, I would say because for many, many decades, this Court has recognized that it is appropriate for a debtor in bankruptcy to shield assets. The McIntyre case says that the purpose of 704.115 is to preserve a stream of income to the detriment of creditors. But probably more importantly, in Stern and even in Daniel, it has been the law for a long time that a debtor in bankruptcy, an individual who's going to be a debtor in bankruptcy can take non-exempt assets and turn them into exempt assets intentionally, purposefully. And it is per se not a fraudulent transfer, and it wouldn't set aside the exemption. But it would have to be, in this instance, for retirement purposes. It would have to be. That would get into the primarily or not primarily, because as Your Honor pointed out earlier, a plan can have multiple purposes. It could be for tax purposes. It could be because you don't want to hand it over to a creditor. It might be, as some of the cases have said, that you might need it for present needs. I mean, you have a retirement plan that goes on for many years, and you want to pull money out to satisfy your current needs. So a plan can have many purposes. But the plan fails, the retirement plan fails for exemption purposes, if it's primarily designed for something other than long-term retirement goals. So why isn't the bankruptcy court's analysis of all of the evidence, looking at all of the factors, why shouldn't we defer to that, that on balance it concluded for well-stated reasons that the primary purpose was not for retirement, citing, among other things, the over-funding and the under-reporting? Well, I think because the bankruptcy court essentially caps the net too wide. Mr. Smiley is correct that the standard from Bloom and others is all factors are relevant. But if you look at Bloom, and Dudley is another one out of this court, that, say, look at the factors, what do they look at? They look at number of withdrawals. They look at the timing of the withdrawal. They look at the frequency. What was the purpose of the withdrawal? They look at factors within the plan. So, Dr. Cunning, the objective of the plan is not to defer to that. Yes, but see, here the shielding function, if that were primary, to avoid having any money available to pay off this judgment debt would counsel against pulling money out. So, in other words, he was pushing it away from access. I think he was pretty clear about that. So the fact that he made no withdrawals doesn't somehow weigh in favor on the facts of this case, given his purpose and his stated purpose. It's not clear to me why the lack of withdrawals should be enough to outweigh the other factors. Well, and maybe by itself it's not. But when you look at how the plan was used, assuming that Judge Ryan got it all correct, in terms of the amount of overfunding and the dates, and assuming Judge Ryan at bankruptcy court level got it right, that Mr. Rucker has no credibility. Assuming you believe all that, you still have to look at the scope of the problem. And the scope of the problem was not that significant. You're talking about modest overfunding. If you take everything in, it's about 20 percent overfunding based on the value of the plan at the time. Is that enough to defeat the retirement purposes of the plan? I would submit that it is not. So I think that it was a factual problem that Judge Ryan looked at. And the thing is, if you look at the overfunding, the important thing in terms of what Judge Ryan had in front of him is he had two experts. He had two ERISA experts, both of which told him the same thing, which is that overfunding is not per se. Well, what about nondisclosure, though? But, well, I guess it depends what the nondisclosure is. I mean, there was the evidence was that Mr. I'm sorry, there was evidence offered that Mr. Rucker was taking money out of his corporations and using it for his personal lifestyle. Okay, well, let's assume that's bad. But the judgment creditor here had a judgment against Mr. Rucker, not against these corporations. So if anything, I would think that the judgment creditor would be pleased to see that Mr. Rucker is buying a nice house in Irvine and a Mercedes and a Range Rover and a Rolex and all these other things that we heard about at court, because that's the party that he had a judgment against. So this Mr. Rucker was not acting like an individual that was worried about a creditor with a judgment. He was trying to avoid that. In fact, he was acting quite contrary. He was buying assets like houses that are very easy to find, assets like cars that are very easy to find. Yes, the evidence was he overfunded. But the evidence from both experts is that overfunding is not fatal. And one of the concerns, one of the criticisms I have about what happened in front of the four-day trial with Judge Ryan is it almost turned into an issue of whether we were having an audit or whether this plan should rise or fail. That wasn't the purpose of why we were there. We were there on a four-day trial about whether the plan ‑‑ I'm sorry, whether the retirement plans were properly exempt under the bankruptcy code. So there was an emphasis on overfunding, which I would submit, even if you take all that evidence was modest at best, certainly not primarily the intent of it, it doesn't defeat the plan. And he wasn't acting as if someone who had come up with this great asset protection idea, I'll create a retirement plan and I'll put all my money in it, because that's not what he did. Counsel, how much deference do we give to the bankruptcy judge's fact finding? It is reviewed for an abuse of discretion standard. So you give it exactly that level of deference. So it sounds like you're retrying it before the district court and now retrying it again before us. No. Well, Judge Ryan, again, I would say we can stipulate to those facts that he found. He found overfunding, and that's fine. But what was the scope of the overfunding? I guess the question for this Court would be if we determine or if the Court determines that as a matter of law and fact that a debtor has in the years prior to a bankruptcy taken a retirement plan and overfunded it by 20 percent. And assuming that's important, assuming that that's even relevant, because Bloom tells us we shouldn't graft IRS and ERISA regulations onto a bankruptcy exemption scheme, but assuming that's true too, does the retirement plan fail because of a 20 percent overfunding? Especially when the experts have said that the overfunding is really not that bad. There's reasons why the overfunding makes sense. Mr. Rucker, as was indicated in the papers, he's in the mortgage industry business, and that's a business that rises and falls. So, yes, he overfunded in years that were, as Dr. Cunning's expert said, fat years, because you have to make up for issues when you have lean years. I mean, it's important to keep in mind the defined benefit plan is an obligation, and this was a 10-year plan. You don't make those up. You don't make those contributions. There's a penalty that goes with that. So I would submit that it's perfectly reasonable to overfund in years when you're doing better, because you can't guarantee that you're going to have 10 years of success. Was Ms. Morrow correct that there were some facts that needed still to be determined? No, she was not. In her clarification order, she did say that she finally resolved the issue that was before her, which is whether the plan was designed in youth primarily for retirement purposes. She got that right. What she didn't get right is she went beyond what she was asked to do, which is to determine whether the plan was designed in youth primarily for retirement, and said, I didn't see in the record what type of plan it was, 704-115-A-1, 2, or 3. But that was never raised to Judge Ryan. It was never raised to her. So she created a question that we never really asked her to resolve and was really never an issue for Judge Ryan either, because the parties knew what they were talking about. So, yes, so that's the issue on the cross-appeal from my client is very limited. It's just limited to that one narrow issue where we think she went beyond what she was asked to do and remanded it for something that was a non-issue, because the parties spent four days not arguing about that. They argued about what they knew they were there about. So there's that. So, you know, you have the issue about, you know, how you look at Bloom, you look at Dudley, you look at these factors, and, you know, how wide should you go. You have Dr. Cunningham's judgment from April of 97. The plan was created in October of 2001. Do we go back to 97? Judge Moreau said, I'm not going to look at his pre-bankruptcy, pre-petition conduct. So, I mean, yes, there was a judgment against him in 97. No dispute that he spent time in prison in the late 90s. But, I mean, how far afield do we go from the issue? And the issue is, you know, how was the plan designed and used? You know, it was designed many years before bankruptcy. It was funded for many years during a bankruptcy. Admittedly, it was overfunded on some of those years. But if the problem was that this was nothing more than an asset protection device, I submit what you would have expected to see was that Mr. Rucker would have put all of his available money into this great scheme that he'd created, because, obviously, the creditors can't get it, because I've got this great retirement plan. And that's not what he did. And, in fact, what we've seen is that he acquired other assets and things like that, and the amount of the overfunding was very minor. Okay. They're over. Oh, thank you. We got it. Thank you. Your Honor, the point is no single factor. You've heard expert testimony. No single factor is dispositive. Judge Ryan, for lack of a better word, had the trifecta. Yeah. He had IRC violations within the plan. He had things going on outside the plan. He had overfunding. $2,402 contributed to a 401K. He reports the $13,000 contribution. He had all those factors. You're right. Not one factor controls. They all control. Judge Ryan had overwhelming evidence. Whether you accept Judge Morrow's decision of the definition or Judge Ryan's decision, it's clear error. The Court's comments are the questions are correct. We should give deference to them. And, in turn, every available penny was either going to support his lifestyle, his condo. What about the notion that being out there, you could have gone after him and seized his houses and cars? Well, the problem was the condo was in the name of the pension plan he was living in at the time, which is one of the condos that he was living in. So, secondly, he was incarcerated until 2001, and we did – that's what shut this down, is they did seize – there was a restraining order locking everything down. All right. So they did. Okay. All right. Thank you. Thank you. I appreciate your time. We appreciate the arguments. That's what we're here for. The case argued is submitted. I think we'll plan to take a short break after this next case, if that's okay with Judge Gould. All right. That's fine. Okay. So we will move to Feldman v. Metropolitan Life.
judges: Fletcher B. , Fisher, Gould